**In the Matter of NEW MEDIA IRJAX, INC., Debtor.**

**NEW MEDIA IRJAX, INC., Plaintiff,**

**v.**

**DC COMICS, INC., Defendant.**

**Bankruptcy No. 82–95.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

March 3, 1982.

Stephen L. Kramer, Tampa, Fla., for debtor.

Russell Bogue, Tampa, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS
OF LAW AND MEMORANDUM
OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a business reorganization case commenced by a petition for order for relief under Chapter 11 of the Bankruptcy Code, filed by New Media Irjax, Inc. (the Debtor), on January 19, 1982. Simultaneously with the filing of the petition, the Debtor filed an Application for Authority to Assume an Executory Contract between the Debtor and D.C. Comics, Inc. (DC) pursuant to § 365 of the Bankruptcy Code. On January 22, 1982, DC filed its Answer to the Application to Assume an Executory Contract. On January 27, 1982, the Debtor

commenced an adversary proceeding by filing a Complaint for a Temporary Restraining Order and/or Preliminary Injunction and sought an order requiring DC to continue to perform pursuant to the contract pending the ultimate determination by this Court as to the ability of the Debtor to assume the contract.

On January 27, 1982, a Temporary Restraining Order was entered by this Court which was extended by orders dated February 3 and February 22, 1982 until further order of Court, respectively.

The matter under consideration is the Debtor's right under a certain contract involved in this controversy, which right, if exists, would be entitled to further protection by the injunctive powers of this Court, pursuant to § 105 of the Code. At a duly scheduled evidentiary hearing, the Court heard testimony of witnesses and considered the documentary evidence and based on the same, now finds and concludes as follows:

On September 11, 1981, Debtor and DC entered into a Non-Returnable Comics Agreement (the Agreement) pursuant to which DC supplied and the Debtor paid for shipments of comic books (Pl's Exh. # 1).

Article VIII of the Agreement provides as follows:

"VIII. This agreement may be terminated by either party upon thirty (30) days prior written notice by mail to the other party. Without limiting the foregoing, DC shall have the right to terminate this Agreement on five (5) days written notice following either: (i) any four failures by Customer within any two month period to make timely payment of any amounts due to DC hereunder; or (ii) any failure to pay DC any amount due to DC within thrity (30) days of the date such payment was due. Provided, however, that Customer shall remain liable for all obligations incurred by it to DC hereunder prior to the date of termination."

On or about January 14, 1982, DC notified the Debtor that, pursuant with Article VIII(ii) of the Agreement, "the Agreement is hereby terminated, effective January 20, 1982." (Def's Exh. # 1.)

The termination of the Agreement by DC was due to non-payment of a shipment of comics made October 20, 1981, for which payment was due December 10, 1981.

For several weeks prior to the effective date of termination, pursuant to the Agreement, DC continued to ship comics to the Debtor on a week-to-week cash-before-delivery basis. Although it is not clear, apparently during this period representatives of or counsel for the Debtor telephonically contacted representatives of or counsel for DC to resolve disputes regarding invoice amount, dates of payment, and contents and dates of shipment.

Debtor filed its original petition herein under Chapter 11 of the Bankruptcy Code on January 19, 1982.

Based on the following, it is the contention of the Debtor that the Agreement is an executory contract which was still a viable contract on the date the Debtor filed his petition for relief and, therefore, pursuant to § 365 of the Code, it is entitled to assume the same provided it meets the conditions for assumption set forth in § 365(b)(1)(A), (B), (C) of the Code, and should be given a reasonable opportunity to establish that it is able to meet those conditions. The Debtor further contends that even if the Agreement was, in fact, effectively cancelled and terminated prior to the commencement of the case, DC is estopped to urge a forfeiture and termination of the Agreement because of certain conduct by DC, to wit: continuing cash shipments even after the notice of termination, and certain telephonic conversations between the parties relating to such shipments.

This record leaves no doubt that the Agreement between the Debtor and DC was properly terminated by the notice of termination, transmitted by DC on or about January 14, 1982, and there remained nothing to be done under the contract except the running of the time. Neither the Agreement nor the notice contained anything which could be considered to be a

grace period of five days, a time within which the Debtor could have cured the admitted defaults. In addition, under Article VIII(ii) of the Agreement, DC had the absolute right to terminate the Agreement based on undisputed prior defaults.

Prior to the adoption of the Code, in some instances, the Courts recognized a forfeiture of contract rights flowing from the executory contract even if based on a so-called bankruptcy forfeiture clause. *Finn v. Meighan*, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945); *Thompson v. Texas Mexican Railway Company*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946). On the other hand, even before the adoption of the Code, some courts refused to enforce bankruptcy forfeiture clauses; *Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2d Cir. 1974), but defaults in an executory contract not based on an intervention in bankruptcy have always been recognized; *In re Beck*, 5 B.R. 169 (Bkrtcy.D.Hawaii 1980); *Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998 (1st Cir. 1979); *In re R.S. Pinellas Motel Partnership*, 2 B.R. 113 (Bkrtcy.M.D.Fla.1979); *In re Nashville White Trucks, Inc.*, 5 B.R. 112 (Bkrtcy.M.D.Tenn.1980).

While the Code now expressly permits a debtor to assume an executory contract under certain conditions set forth in § 365, there still must be a viable and existing executory contract on the date the petition for relief was filed which could be assumed. If the executory contract was effectively cancelled prior to the intervention of bankruptcy, there remains nothing for the Debtor to assume. As stated by the Fifth Circuit Court of Appeals in *Schokbeton Industries, Inc. v. Schokbeton Products Corporation*, 466 F.2d 171, 176–177 (5th Cir. 1972), once the right under an agreement evaporated upon receipt of the written notice of termination "neither the mere filing of the arrangement petition nor the referee's order purporting to extend the grace period for the cure of the default nor a mystical combination of both could effect their recondensation." While *Schokbeton, supra* is a pre-Code case, there is nothing in the Code which requires a different result.

The Debtor relies on the case of *In re Bronx—Westchester Mack Corporation*, 4 B.R. 730 (Bkrtcy.S.D.N.Y.1980) which stands for the proposition that where a debtor who entered into a contractual agreement with another party delayed filing a chapter 11 bankruptcy petition in reliance upon such party's promise that it would not issue a notice of termination of that contract prior to a certain date and where, despite such assurances, that party attempted to terminate the contract or agreement before the bankruptcy filing, such party was estopped from asserting the effectiveness of the pre-petition termination notice. There is nothing in the case of *In re Bronx, supra*, which supports the Debtor's contention that DC is estopped to urge cancellation. There is nothing in this record which supports the proposition that DC ever made any promises or did anything affirmatively, reliance on which the Debtor changed its position to its detriment. Specifically, this Court is satisfied from the totality of the evidence that although DC made interim week-to-week cash shipments, such shipments were allowed under the contract and DC made no agreements or gave any assurances that it would not terminate the Agreement before a date certain and made no agreements or assurances to continue to ship comic books for any length of time whatsoever.

In light of the foregoing, this Court is satisfied that the Agreement was effectively cancelled prior to the intervention of bankruptcy; therefore, the Debtor's Application for Authority to Assume Executory Contract with DC is without merit and should be denied. From all this it follows that there are no longer any rights remaining flowing from that Agreement which warrants any further protection by this Court. Therefore, the Temporary Restraining Order heretofore issued as extended shall be terminated forthwith and the complaint for injunctive relief should be dismissed.

A separate final judgment will be entered in accordance with the foregoing.